|  |  |  |
|---|---|---|
| WISCONSINITES FOR ALTERNATIVES TO SMOKING AND TOBACCO, INC.; JHH 5 BROTHERS, LLC d/b/a DISTRO GUYS WHOLESALE; TRUVIBE INC. d/b/a THE SUPPLY PLUS; JOHNNY VAPES, LLC; VISFOT, INC. d/b/a NARA SMOKE SHOP; WAGES AND WHITE LION INVESTMENTS, LLC d/b/a TRITON DISTRIBUTION; KURT WYLIE; and GERMAINE CARMODY, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 3:25-cv-552-wmc<br><br>**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| Plaintiffs, | ) |  |
| v. | )<br>) |  |
| DAVID CASEY, Secretary of the Wisconsin Department of Revenue, in his official capacity, | )<br>)<br>) |  |
| Defendant. | )<br>) |  |

Pursuant to the Court's July 24, 2025 Order (ECF No. 45), Plaintiffs Wisconsinites for Alternatives to Smoking and Tobacco, Inc., JHH 5 Brothers, LLC d/b/a Distro Guys Wholesale ("Distro Guys"), TruVibe Inc. d/b/a The Supply Plus ("The Supply Plus"), Johnny Vapes, LLC ("Johnny Vapes"), Visfot Inc. d/b/a Nara Smoke Shop ("Nara Smoke"), Wages and White Lion Investments, LLC d/b/a Triton Distribution, Kurt Wylie, and Germaine Carmody respectfully file this reply memorandum in support of their motion for a preliminary injunction (ECF No. 15) against Defendant David Casey, the Secretary of the Wisconsin Department of Revenue.

# TABLE OF CONTENTS

ARGUMENT ........................................................................................................................... 1

A.  Plaintiffs Have Article III Standing. ............................................................................ 1

B.  Plaintiffs Have a Strong Likelihood of Success on the Merits Because 21 U.S.C § 337(a) Impliedly Preempts Wisconsin Statutes § 995.15................................................................ 5

   1.  Section 337(a) applies to Wisconsin Statutes § 995.15. ................................................ 6

      a.  Implied preemption under section 337(a) turns on whether the law at issue is "parasitic" on the FDCA, not on whether a court must determine whether the FDA was correct or whether a defendant tricked the FDA...............................6

      b.  Implied preemption under section 337(a) is properly raised as part of an affirmative claim under the Declaratory Judgment Act, not merely as an affirmative defense..................................................................................................9

      c.  The fact that section 995.15 does not facially require a determination of whether an applicant is in violation of the FDCA is irrelevant ...........................10

   2.  Title 21 U.S.C. § 387p does not render section 337(a) inoperative. .............................. 11

C.  Plaintiffs Will Suffer Irreparable Harm Absent Preliminary Relief. ............................... 17

CONCLUSION................................................................................................................... 20

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abbott Laboratories* v. *Gardner*,
387 U.S. 136 (1967)..............................................................................................9

*ABF Freight Sys. v. Int'l Bhd. of Teamsters*,
645 F.3d 954 (8th Cir. 2011) ...............................................................................1

*Association of Data Processing Service Organizations Inc. v. Camp*,
397 U.S. 150 (1970)..............................................................................................1

*Braidwood Mgmt. v. EEOC*,
70 F.4th 914 (5th Cir. 2023) .................................................................................9

*Brown v. Kemp*,
86 F.4th 745 (7th Cir. 2023) .................................................................................2

*Buckman Co. v. Plaintiffs' Legal Committee*,
531 U.S. 341 (2001)..........................................................................2, 6, 12, 15

*Cannon v. Univ. of Chicago*,
441 U.S. 677 (1979)............................................................................................14

*Carlsen v. GameStop, Inc.*,
833 F.3d 903 (8th Cir. 2016) ...............................................................................5

*Christian County Clerk v. Mortgage Elec. Registration Sys.*,
515 Fed. Appx. 451 (6th Cir. 2013).................................................................1, 2

*Czyzewski v. Jevic Holding Corp.*,
580 U.S. 451 (2017)..............................................................................................5

*Depuy, Inc. v. Zimmer Holdings, Inc.*,
384 F. Supp. 2d 1237 (N.D. Ill. 2005) .................................................................1

*District of Columbia v. Heller*,
554 U.S. 570 (2008)..............................................................................................1

*E. Edelmann & Co. v. Triple-A Specialty Co.*,
88 F.2d 852 (7th Cir. 1937) ..................................................................................9

*Farmworker Ass'n of Fla. v. Moody*,
734 F. Supp. 3d 1311 (S.D. Fla. 2024) .................................................................4

*FDA v. Alliance for Hippocratic Med.*,
  602 U.S. 367 (2024)............................................................................................................2

*FDA v. Brown & Williamson Tobacco Corp.*,
  529 U.S. 120 (2000)..........................................................................................................13

*Galvin v. New York Racing Ass'n*,
  70 F. Supp. 2d 163 (E.D.N.Y. 1998) ................................................................................18

*Garcia v. Wyeth-August Laboratories*,
  385 F.3d 961 (6th Cir. 2004) ............................................................................................10

*Geier v. Am. Honda Motor Co.*,
  529 U.S. 861 (2000)..........................................................................................................12

*Heckler v. Chaney*,
  470 U.S. 821 (1985)............................................................................................................2

*Iowans for Alternatives to Smoking & Tobacco, Inc. v. Iowa Dep't of Revenue*,
  __ F. Supp. 3d ___, No. 4:24-cv-00448-SMR-HCA,
  2025 U.S. Dist. LEXIS 85732 (S.D. Iowa May 2, 2025) ..................................4, 8, 15, 19, 20

*Kobar v. Novartis Corp.*,
  378 F. Supp. 2d 1166 (D. Ariz. 2005) ..............................................................................13

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)............................................................................................................1

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007)............................................................................................................9

*Miles v. Apex Marine Corp.*,
  498 U.S. 19 (1990)............................................................................................................14

*Minniecheske v. Vocke*,
  No. 89-1347, 1990 U.S. App. LEXIS 18436 (7th Cir. Oct. 19, 1990) ................................9

*Nathan Kimmel v. DowElanco*,
  275 F.3d 1199 (9th Cir. 2002) ..........................................................................................13

*National Association of Tobacco Outlets, Inc. v. City of Providence*,
  731 F.3d 71 (1st Cir. 2013)................................................................................................14

*Nexus Pharmaceuticals, Inc. v. Central Admixture Pharmacy Services, Inc.*,
  48 F. 4th 1040 (9th Cir. 2022) ............................................................................................7

*Novo Nordisk Inc. v. Live Well Drugstore, LLC*,
  No. 23-cv-808, 2025 U.S. Dist. LEXIS 17792 (M.D. Fla. Jan. 30, 2025)............................7, 8

*NRA of Am. v. Magaw*,
132 F.3d 272 (6th Cir. 1997) ...................................................................9

*Nucor Corp. v. Aceros y Maquilas de Occidente, S.A. de C.V.*,
28 F.3d 572 (7th Cir. 1994) ...................................................................10

*Oehrliens & Sons & Daughter, Inc. v. Hennepin Cnty.*,
115 F.3d 1372 (8th Cir. 1997) ...............................................................5

*Parker v. District of Columbia*,
478 F.3d 370 (D.C. Cir. 2007) ...............................................................1

*Perez v. Nidek Co.*,
657 F. Supp. 2d 1156 (S.D. Cal. 2009) ...................................................8

*R.J. Reynolds Co. v. City of Edina*,
60 F.4th 1170 (8th Cir. 2023) ................................................................14

*R.J. Reynolds Tobacco Co. v. County of Los Angeles*,
29 F.4th 542 (9th Cir. 2022) ..................................................................14

*Regan v. Sioux Honey Association Cooperative*,
921 F. Supp. 2d 938 (E.D. Wis. 2013) ...................................................8

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*,
547 U.S. 47 (2006) ..................................................................................5

*Steffel v. Thompson*,
415 U.S. 452 (1974) ...............................................................................10

*Tom Doherty Assocs. v. Saban Entm't, Inc.*,
60 F.3d 27 (2d Cir. 1995) .......................................................................19

*U.S. Smokeless Manufacturing Co. LLC v. City of New York*,
708 F.3d 428 (2d Cir. 2013) ...................................................................14

*United States v. Iowa*,
737 F. Supp. 3d 725 (S.D. Iowa 2024) ...................................................4

*United States v. Munsingwear*,
340 U.S. 36 (1950) ..................................................................................4

*VanDerStok v. Garland*,
633 F. Supp. 3d 847 (N.D. Tex. 2022) ...................................................19

*Vapor Tech. Ass'n v. Wooten*,
No. 4:25-cv-00076-M-RJ, 2025 U.S. Dist. LEXIS 123020 (June 27, 2025).......................4, 16

**Statutes**

21 U.S.C. § 331 ..................................................................................................5, 15, 16

21 U.S.C. § 332 .....................................................................................................15, 16

21 U.S.C. § 333 .....................................................................................................15, 16

21 U.S.C. § 334 .....................................................................................................15, 16

21 U.S.C. § 337 ........................................................................................... *passim*

21 U.S.C. § 353b .........................................................................................................7

21 U.S.C. § 387a-1 ....................................................................................................13

21 U.S.C. § 387b .......................................................................................................16

21 U.S.C. § 387c .......................................................................................................15

21 U.S.C. § 387e .......................................................................................................15

21 U.S.C. § 387p.............................................................................. 6, 11, 12, 14-16

21 U.S.C. § 387s .......................................................................................................15

21 U.S.C. § 844 ...........................................................................................................4


**Regulations**

21 C.F.R. § 1308.11 ...................................................................................................4

21 C.F.R. Part 1140.................................................................................................13


**Other Authorities**

FDA, *Homeopathic Drug Products; Guidance for FDA Staff and Industry*
(Dec. 2022), *available at* https://www.fda.gov/regulatory-information/search-
fda-guidance-documents/homeopathic-drug-products-guidance-fda-staff-and-
industry .......................................................................................................................3

FDA, *Infant Formula Enforcement Discretion Policy: Guidance for Industry*
(May 2022), *available at* https://www.fda.gov/regulatory-information/search-
fda-guidance-documents/guidance-industry-infant-formula-enforcement-
discretion-policy ........................................................................................................2

FDA, *Regulations Restricting the Sale and Distribution of Cigarettes and Smokeless Tobacco to Protect Children and Adolescents*, 75 Fed. Reg. 13225 (Mar. 19, 2010)..................................................................13

FDA, *Termination of the FDA's Unapproved New Drugs Initiative; Withdrawal*, 86 Fed. Reg. 28605 (May 27, 2021) ...................................................................3

6A Moore's Federal Practice (2d ed. 1986) ................................................................9

R. Gupta, et al., *The FDA Unapproved Drugs Initiative: An Observational Study of the Consequences for Drug Prices and Shortages in the United States*, 23 Journal of Managed Care and Specialty Pharmacy (Oct. 2017)............................................3

# ARGUMENT

## A. Plaintiffs Have Article III Standing.

Contrary to Defendant's contentions, Plaintiffs are threatened with an imminent and irreparable injury in fact and have Article III standing. Defendant's standing argument is premised entirely on the fact that the Supreme Court's opinion in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), describes "injury in fact" as "an invasion of a legally protected interest," *id.* at 560. From that premise, Defendant argues that Plaintiffs cannot have standing because "unauthorized vapor product[s]" are illegal under the FDCA. Opp. at 19. Defendant reasons that because "drug smugglers" lack standing to challenge a criminal statute affecting their sale or possession of illegal drugs, sellers and users of unauthorized ENDS similarly lack standing to challenge section 995.15. Opp. at 18. Defendant's arguments are incorrect for at least five reasons.

*First*, Defendant misreads *Lujan*. Explaining *Lujan*, Judge Posner, sitting by designation, said: "[i]t is difficult to take *Lujan*'s formulation at face value. An injury 'in fact' is not, as the quoted statement implies, the same thing as the invasion of a legally protected interest." *Depuy, Inc. v. Zimmer Holdings, Inc.*, 384 F. Supp. 2d 1237, 1240 (N.D. Ill. 2005). Other circuit courts concur with Judge Posner: "[w]hen the Supreme Court used the phrase 'legally protected interest' as an element of injury-in-fact, it made clear it was referring only to a 'cognizable interest.'" *ABF Freight Sys. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 959 (8th Cir. 2011) (quoting *Parker v. District of Columbia*, 478 F.3d 370, 377 (D.C. Cir. 2007), *aff'd sub nom. District of Columbia v. Heller*, 554 U.S. 570 (2008)). "When the *Lujan* Court used the phrase 'legally protected interest,' … the Court did not mean to suggest a return to the old 'legal right' theory of standing rejected in *Association of Data Processing Service Organizations Inc. v. Camp*, 397 U.S. 150, 153-54 (1970)." *Christian County Clerk v. Mortgage Elec. Registration Sys.*, 515 Fed. Appx. 451, 454 (6th Cir. 2013) (internal quotations omitted). "As the Supreme Court clarified in *Data Processing*,

1

a plaintiff need not have a 'legal right' or a right protected by the law of property, contract, tort, or statute, to suffer injury-in-fact." *Id.*

The "judicially cognizable interest" requirement means only that for "a plaintiff to get in the federal courthouse door and obtain a judicial determination of what the governing law is, [he] cannot be a mere bystander, but instead must have a 'personal stake' in the dispute." *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 379 (2024); *Brown v. Kemp*, 86 F.4th 745, 761 (7th Cir. 2023) ("To invoke the federal judicial power, a plaintiff must have standing—a personal stake in the case.") (internal quotations omitted).

Here, Plaintiffs have a personal stake in the dispute over whether section 995.15 violates the Constitution's Supremacy Clause; they thus have Article III standing.

*Second*, contrary to Defendant's contentions, sellers of unauthorized ENDS are not analogous to persons who sell illegal narcotics. The drug smuggler example does not apply where, as here, the FDA is exercising its enforcement discretion. Because "flexibility is a critical component of the statutory and regulatory authority under which the FDA pursues difficult (and often competing) objectives," *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 349 (2001), the FDCA's "enforcement provisions . . . commit complete discretion to [the FDA] to decide how and when they should be exercised," *Heckler v. Chaney*, 470 U.S. 821, 835 (1985) (emphasis added). For public health reasons, the FDA often chooses to exercise that discretion by not enforcing certain FDCA requirements.

For example, because of supply shortages of infant formula, the FDA has exercised enforcement discretion over formulas that do not meet all FDCA requirements.[1] As another

---

[1] *See* FDA, *Infant Formula Enforcement Discretion Policy: Guidance for Industry* at 3 (May 2022), available at https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-infant-formula-enforcement-discretion-policy (stating that due to a

2

example, the FDA has allowed some unapproved drugs to remain on the market because the drugs pose a low safety risk and are medically necessary for some patients.[2] Many of those unapproved drugs are commonly prescribed by doctors and available at most pharmacies.[3] And as Plaintiffs have already explained, the FDA has had several enforcement discretion policies with respect to unauthorized ENDS over the past nine years.

If Defendant's proposed interpretation of *Lujan*'s "legally protected interest" language applied, as here, to a situation in which a plaintiff sold a product for which the FDA was exercising enforcement discretion for public health reasons, that interpretation would lead to absurd results. For example, a plaintiff who manufactures a product over which the FDA is exercising enforcement discretion could not obtain relief in an Article III court from a defendant who causes injury to the plaintiff with respect to that product. Thus, to use the infant formula example, a plaintiff who manufactures infant formula under the FDA's exercise of enforcement discretion would not be able to sue a grocery store for breaching a contract to purchase that formula. The grocery store could simply argue that the manufacturer has no Article III standing for its breach of

---

shortage of infant formula, "FDA intends to temporarily exercise enforcement discretion with respect to certain requirements for infant formulas that may not comply with certain statutory and regulatory requirements").

[2] *See* FDA, *Termination of the FDA's Unapproved New Drugs Initiative; Withdrawal*, 86 Fed. Reg. 28605, 28606 (May 27, 2021) (stating that one of the goals of FDA's "risk-based approach" to unapproved drugs is to "preserv[e] patient access to medically necessary drugs").

[3] *See* R. Gupta, et al., *The FDA Unapproved Drugs Initiative: An Observational Study of the Consequences for Drug Prices and Shortages in the United States*, 23 Journal of Managed Care and Specialty Pharmacy, 1066, 1067 (Oct. 2017) ("The FDA estimated that approximately 2% of all prescriptions dispensed in the United States in 2006 may have been for products lacking FDA approval."); FDA, *Homeopathic Drug Products; Guidance for FDA Staff and Industry* 1 (Dec. 2022), available at https://www.fda.gov/regulatory-information/search-fda-guidance-documents/homeopathic-drug-products-guidance-fda-staff-and-industry (stating "[t]he Agency anticipates that many homeopathic drug products will fall outside the categories of drug products that FDA intends to prioritize for enforcement and regulatory action").

contract claim because the infant formula does not fully comply with FDCA requirements. The language that Defendant quotes from *Lujan* does not support such an absurd result.

*Third*, as the court noted in *Iowans for Alternatives to Smoking & Tobacco, Inc. v. Iowa Dep't of Revenue*, __ F. Supp. 3d ___, No. 4:24-cv-00448-SMR-HCA, 2025 U.S. Dist. LEXIS 85732 (S.D. Iowa May 2, 2025) ("*IFAST*"), "[a] rule that denies standing to Plaintiffs based solely on imperfect compliance with federal law would create an anomalous result: states could evade preemption challenges by simply asserting a plaintiff's noncompliance with the very federal standards at issue. Such circularity finds no support in our federalist structure." *Id*. at *19-20; *accord Vapor Tech. Ass'n v. Wooten*, No. 4:25-cv-00076-M-RJ, 2025 U.S. Dist. LEXIS 123020, *8-9 (E.D.N.C. June 27, 2025) (citing approvingly to *IFAST* and concluding that because "[t]he standing doctrine does not presume upon the merits a party's claim," the plaintiffs there had Article III standing).

Indeed, where a plaintiff is the target of a state law that is preempted by federal law, the plaintiff has standing to challenge the state law even if the plaintiff's conduct violates federal law. *See United States v. Iowa*, 737 F. Supp. 3d 725, 744-45 (S.D. Iowa 2024) (indicating that unlawfully present immigrant had standing to challenge a state immigration statute as preempted by federal law), *aff'd*, 126 F.4th 1334 (8th Cir. Jan. 24, 2025), then vacated under *United States v. Munsingwear*, 340 U.S. 36 (1950), No. 24-2265, 2025 WL 1140834 (8th Cir. Apr. 15, 2025); *Farmworker Ass'n of Fla. v. Moody*, 734 F. Supp. 3d 1311, 1323, 1328 (S.D. Fla. 2024) (same).

*Fourth*, even if Defendant's standing argument were correct as to the retailer Plaintiffs (which it is not), the argument would still be incorrect as to the consumer Plaintiffs. Federal law prohibits mere possession of controlled substances, including marijuana. 21 U.S.C. § 844(a); 21 C.F.R. § 1308.11(d)(23). But the FDCA does not prohibit the mere possession (or use) of

unauthorized ENDS; it prohibits only the distribution of unauthorized ENDS in interstate commerce. 21 U.S.C. § 331(a)-(c). So the consumer Plaintiffs, Kurt Wylie and Germaine Carmody, have standing regardless of whether the retailer Plaintiffs have standing. And "the presence of one party with standing is sufficient to satisfy Article III's case or controversy requirement." *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006).

*Fifth*, the business Plaintiffs' injuries are not limited to lost revenues and profits from sales of unauthorized ENDS products. Enforcement of section 995.15's restrictions will force Plaintiffs Johnny Vapes, The Supply Plus, and Nara Smoke to close their stores (and may force Distro Guys to close its distribution business), so they will also suffer lost revenues and profits from sales of other products, including FDA-authorized ENDS, premium cigars, and other products not subject to FDA regulation. *See* PFF ¶¶ 57, 58, 64, 66, 67, 73, 79; *see also* ECF No. 19 at ¶ 13, ECF No. 20 at ¶¶ 7, 10, ECF No. 21 at ¶¶ 10, 11. Such an injury is sufficient to establish Article III standing, *cf. Carlsen v. GameStop, Inc.*, 833 F.3d 903, 909-10 (8th Cir. 2016); *Oehrliens & Sons & Daughter, Inc. v. Hennepin Cnty.*, 115 F.3d 1372, 1379 (8th Cir. 1997), even if the dollar amount of that injury is relatively small, *see Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'").

Plaintiffs satisfy the "injury-in-fact" requirement for Article III standing.

**B.     Plaintiffs Have a Strong Likelihood of Success on the Merits Because 21 U.S.C. § 337(a) Impliedly Preempts Wisconsin Statutes § 995.15.**

In his Opposition, Defendant contends that 21 U.S.C. § 337(a)—the provision of the FDCA that says that only the federal government can enforce the Act—does not impliedly preempt section 995.15 because section 337(a) either (i) is inapplicable to section 995.15, or (ii) is rendered

inoperative by 21 U.S.C. § 387p. For the reasons explained herein, both of Defendant's arguments are incorrect.

1. **Section 337(a) applies to Wisconsin Statutes § 995.15.**

Defendant contends that section 337(a) does not impliedly preempt Wisconsin Statutes § 995.15 because section 337 "prohibits only lawsuits by non-U.S. plaintiffs that would require courts to adjudicate whether certain FDCA provisions have been violated" and cannot be used to "facially invalidate state statutes." Opp. at 28. This cramped characterization of the scope of implied preemption under section 337(a) is inconsistent with extensive authority applying the statute.

Defendant purports to categorize the case law from federal courts around the country that have found implied preemption under section 337(a) as all involving (i) plaintiffs that brought suit to enforce provisions of the FDCA that Congress had tasked the FDA with enforcing, (ii) defendants that raised preemption as an affirmative defense to those claims, and (iii) dismissals of the claims because they "would have required the courts to determine whether the defendants had violated provisions of the FDCA." Opp. at 29. Overly relying on the specific facts of *Buckman*, 531 U.S. 341, Defendant claims that section 337(a) is inapplicable here because (i) nothing in section 995.15 "requires a judicial determination of whether the FDA was correct, or whether a defendant tricked the FDA"; and (ii) Plaintiffs assert section 337(a) "as a sword to facially invalidate Wisconsin's regulatory scheme." Opp. at 31.

a. **Implied preemption under section 337(a) turns on whether the law at issue is "parasitic" on the FDCA, not on whether a court must determine whether the FDA was correct or whether a defendant tricked the FDA.**

Contrary to Defendant's claims, courts have regularly found implied preemption under section 337(a) even though resolving the claim did not require determining whether FDA was

correct or whether a defendant had misled the FDA. Instead, the mere fact that the state law claim was "parasitic" (or dependent) on the FDCA was sufficient. *IFAST*, 2025 U.S. Dist. LEXIS 85732 at *38.

In *Nexus Pharmaceuticals, Inc. v. Central Admixture Pharmacy Services, Inc.,* 48 F. 4th 1040 (9th Cir. 2022), the plaintiff did not assert that the defendant violated a provision of the FDCA that limits the compounding of FDA-approved drugs, 21 U.S.C. § 353b. 48 F.4th at 1044. Instead, the plaintiff claimed that the defendant was violating state laws that prohibit the sale of drugs not approved by the FDA. *Id*. Noting that the plaintiff "relies on a state statute which itself relies on the federal statute," *id.* at 1046, and that "a necessary element of [plaintiff's] claim is the alleged violation of the FDCA," *id*. at 1048, the court noted as follows:

> The statutory prohibition on private enforcement gives the FDA discretion to temper enforcement or not to enforce in circumstances it deems appropriate. If state law facilitates enforcement beyond what the FDA has deemed appropriate, then state law claims may indeed "stand as an obstacle" to FDA's enforcement discretion by enabling what the FDA regards as over-enforcement.

*Id*. at 1048. Because all the plaintiff's claims implicitly depended on a determination of whether the defendant's drug violated a provision of the FDCA, the court found the plaintiff's state law claims impliedly preempted. *Id*. at 1050-51. Nothing in *Nexus Pharmaceuticals* required the presiding court to determine whether a determination by the FDA was correct or whether the defendant had misled the FDA.

Similarly, in *Novo Nordisk Inc. v. Live Well Drugstore, LLC*, No. 23-cv-808, 2025 U.S. Dist. LEXIS 17792 (M.D. Fla. Jan. 30, 2025), the plaintiff was the only company with FDA approval for drugs containing semaglutide, a drug for weight management and treatment of diabetes. The plaintiff's claims against the defendant, a compounded drug manufacturer, were premised on violations of the Florida Deceptive and Unfair Trade Practices Act. *Id*. at *2. The

court found the claims impliedly preempted because, even though the complaint was "artfully written," the existence of the FDCA was a "critical element" of the claims. *Id*. at **13-15. As to the plaintiff's second claim, the court observed:

> Given the federal government's "nearly exclusive" authority to enforce the FDCA, courts around the country have generally refused to encroach on that authority by adjudicating claims that a party has (or has not) complied with the FDCA—even where the plaintiff tries to bring its claims under other federal or state statutes.

*Id*. at *15 (internal quotation omitted). Once again, nothing about the claims required the court to find whether a determination by the FDA was correct or whether the defendant had misled the FDA.

Closer to home, in *Regan v. Sioux Honey Association Cooperative*, 921 F. Supp. 2d 938 (E.D. Wis. 2013), a putative class action, the plaintiff asserted a claim under Wisconsin Administrative Code § ATCP 90.10(1), which requires food sold in the state to be labeled in compliance with applicable rules adopted by the FDA under the Code of Federal Regulations, *id*. at 944-45. Citing section 337(a) and noting that a private party "cannot attempt to enforce the FDCA 'under the guise of state law claims,'" the court granted the defendant's motion to dismiss. *Id*. at 945 (quoting *Perez v. Nidek Co.*, 657 F. Supp. 2d 1156, 1166 (S.D. Cal. 2009)). Here, once again, nothing about the case required the court to find whether a determination by the FDA was correct or whether the defendant had misled the FDA.

Like the statutory claims at issue in each of these three cases, Wisconsin Statutes § 995.15 incorporates by reference FDCA requirements. Allowing it to stand would be to bless encroachment on the federal government's exclusive enforcement authority and discretion as to how and when to enforce against unauthorized ENDS products.

**b.** **Implied preemption under section 337(a) is properly raised as part of an affirmative claim under the Declaratory Judgment Act, not merely as an affirmative defense.**

Defendant also contends that the situation here differs from cases where courts have found implied preemption under section 337(a) because Plaintiffs are seeking to wield section 337(a) as a "sword" instead of as a defensive "shield." This contention need not detain the Court long. The Declaratory Judgment Act, 28 U.S.C. § 2201, pursuant to which Plaintiffs assert their claims, ECF No. 1 at ¶¶ 22, 97, "provides the mechanism for seeking pre-enforcement review of a statute." *NRA of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997). "To raise a constitutional challenge, the petitioner did not need to break the law and thereby expose himself to liability. Instead, he merely need[s] to show a genuine threat of enforcement." *Braidwood Mgmt. v. EEOC*, 70 F.4th 914, 926 (5th Cir. 2023).

"The 'declaratory judgment remedy is an all-purpose remedy designed to permit an adjudication whenever the court has jurisdiction, there is an actual case or controversy, and an adjudication would serve a useful purpose.'" *Minniecheske v. Vocke*, No. 89-1347, 1990 U.S. App. LEXIS 18436, *22 (7th Cir. Oct. 19, 1990) (quoting 6A Moore's Federal Practice para. 57.05 (2d ed. 1986)). In enacting the Declaratory Judgment Act, it "was [C]ongress['s] intent to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued." *E. Edelmann & Co. v. Triple-A Specialty Co.*, 88 F.2d 852, 854 (7th Cir. 1937). "The dilemma posed by [government] coercion—putting the challenger to the choice between abandoning his rights or risking prosecution—is 'a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007) (quoting *Abbott Laboratories* v. *Gardner*, 387 U.S. 136, 152 (1967)).

"[F]ederal declaratory relief is not precluded when . . . a federal plaintiff demonstrates a genuine threat of enforcement of a disputed state . . . statute, whether an attack is made on the constitutionality of the statute on its face or as applied." *Steffel v. Thompson*, 415 U.S. 452, 475 (1974). When "the declaratory judgment will clarify and settle the disputed legal relationships and afford relief from the uncertainty and controversy that created the issues, it is usually resolved rather than dismissed." *Nucor Corp. v. Aceros y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 578 (7th Cir. 1994).

Here, Plaintiffs seek a declaratory judgment from the Court as to the constitutionality of section 995.15 specifically so that they are not required to violate section 995.15 and wait for the WDOR or a private competitor to file suit against them for civil penalties, damages, or attorneys' fees before their implied preemption defense can be adjudicated. Because such anticipatory adjudication is the very reason Congress enacted the Declaratory Judgment Act, the procedural posture of this case as opposed to many of the cases where courts have previously found implied preemption under section 337(a) is a distinction without a difference.[4]

For these reasons, the fact that Plaintiffs invoke section 337(a) as part of their claims for declaratory relief provides no basis to conclude that section 995.15 is not impliedly preempted.

### c. The fact that section 995.15 does not facially require a determination of whether an applicant is in violation of the FDCA is irrelevant.

Defendant also contends that section 995.15 "requires no determination of whether someone is violating a relevant provision of the TCA," Opp. at 28, and highlights that eligibility

---

[4] Defendant also cites *Garcia v. Wyeth-August Laboratories*, 385 F.3d 961 (6th Cir. 2004), apparently for the proposition that implied preemption under Section 337(a) cannot be advanced as part of an offensive claim. But *Garcia* is inapposite; the exceptions to the Michigan drug product tort liability and immunity statute at issue there turned on whether FDA new drug approval was obtained through fraud. 385 F.3d at 964, 965. Nothing in section 995.15 relates to a potential claim of fraud on the FDA—only the manufacturer's full or partial compliance with 21 U.S.C. § 387j.

for listing in the directory does not turn exclusively on whether an ENDS product has received FDA marketing authorization, Opp. at 33-34. This observation, however, elides the fact that, to be eligible for inclusion in the directory prescribed by section 995.15, an ENDS product must be either fully compliant with the FDCA's marketing authorization requirements—in which case it is the subject of an FDA marketing granted order under 21 U.S.C. § 387j and qualifies for listing under section 995.15(2)(a)—or the ENDS product must be partially compliant with the FDCA's marketing authorization requirements—in which case the product was commercially marketed as of August 8, 2016, an application was submitted for it by September 9, 2020, that remains under FDA review, and the product qualifies for listing under section 995.15(2)(b).

Implicit in section 995.15's own terms of directory eligibility for ENDS products is that if the product is not either fully or partially compliant with the requirements of 21 U.S.C. § 387j, that ENDS product cannot be sold in Wisconsin.[5] Indeed, this point is underscored by Defendant's frank admission that listing on the directory "is a temporary status—product[s] that FDA concludes do not meet premarket approval will not appear on the directory." Opp. at 34 n.8. And because the WDOR and private competitors will enforce section 995.15's requirements against sellers of unlisted ENDS products, they—not the FDA—will also be indirectly enforcing 21 U.S.C. § 387j's requirements.

2.       **Title 21 U.S.C. § 387p does not render section 337(a) inoperative.**

Defendant also contends that the preservation, express preemption, and savings clauses set forth in the Tobacco Control Act provisions of the FDCA, 21 U.S.C. § 387p, render section 337(a) inoperative as respects Wisconsin Statutes § 995.15. Opp. at 22-28. This is the case, Defendant

---

[5] Defendant suggests in passing that even if section 995.15(2)(a) is impliedly preempted, subsection (2)(b)—which references pending, as opposed to approved, applications for marketing authorization—would not be. Opp. at 36. But both subsections explicitly cross-reference 21 U.S.C. § 387j's requirements and so both are equally preempted by section 337(a).

11

claims, because section 387p only preempts state law restrictions in the areas of tobacco product manufacturing and labeling, but not sales. Opp. at 22. Because, Defendant asserts, section 995.15 has "nothing to do with regulating . . . tobacco product manufacture" and is only a sales and distribution regulation, it is not preempted. Opp. at 25-26.

Defendant's argument misconstrues the interplay between section 387p and section 337(a). Defendant's interpretation would effectively allow a state to write section 337(a) out of the FDCA and render it inoperative for any state-law tobacco-product restriction that could be characterized as a "sales requirement," even if the restriction entirely depended on a provision of the FDCA and was to be enforced by parties other than the federal government. This was not Congress's intent.

The fact that the TCA included preservation, express preemption, and savings clauses that allow states to regulate the sale of tobacco products does not indicate that Congress intended to narrow the implied preemptive effect of section 337(a).

Defendant's argument ignores the Supreme Court's clear command that "neither an express pre-emption provision nor a saving clause bars the ordinary working of conflict pre-emption principles." *Buckman*, 531 U.S. at 353 & n.2 (internal quotation and citation omitted); *see also Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 869 (2000) (observing that a "savings clause (like an express preemption provision) does *not* bar the ordinary working of conflict pre-emption principles" (emphasis in original)). Although Plaintiffs emphasized these binding authorities in their opening memorandum, ECF No. 16 at 30 of 36, Defendant's opposition is resoundingly silent on this point. Neither section 387p's savings clause nor its express preemption provision changes the fact that section 337(a) impliedly preempts section 995.15.

To be sure, section 387p(a)(1) says that "nothing in [the TCA], or rules promulgated under [the TCA] shall be construed to limit the authority of" a State to adopt laws "prohibiting the sale,

distribution, possession, exposure to, access to, advertising and promotion of, or use of tobacco products by individuals of any age." But that language simply preserves a State's right to adopt a minimum age for use of tobacco products above that set by the federal government and to adopt advertising and marketing restrictions intended to reduce tobacco use that are more stringent than federal restrictions. When Congress amended the FDCA by adopting the TCA in 2009, Congress mandated that the FDA re-adopt tobacco regulations that the agency adopted in 1996 and that the Supreme Court vacated in 2000. *See* 21 U.S.C. § 387a-1; FDA, *Regulations Restricting the Sale and Distribution of Cigarettes and Smokeless Tobacco to Protect Children and Adolescents*, 75 Fed. Reg. 13225 (Mar. 19, 2010) (codified at 21 C.F.R. Part 1140).[6] The "purpose" of the regulations was to "reduce the number of children and adolescents who use cigarettes through "restrictions on the sale, distribution, and use of cigarettes," such as setting the minimum smoking age at 18 years and other restrictions on the sale and advertising of tobacco products. 75 Fed. Reg. at 13230. For example, the regulations prohibited cigarette vending machines in areas accessible to anyone under 18, and they restricted the content of cigarette advertising in publications with significant youth readership. *Id*. at 13231-32.

When Congress added the tobacco product provisions to the FDCA in 2009, *Buckman* had already been on the books for eight years. Lower courts had recognized that the "key factor identified by the Supreme Court in concluding that Buckman's claims were pre-empted was [that] 'the existence of [the FDCA was] a critical element in [the] case." *Nathan Kimmel v. DowElanco*, 275 F.3d 1199, 1206 (9th Cir. 2002). Moreover, "lower courts ha[d] applied *Buckman*'s reasoning to other federal statutory schemes." *Kobar v. Novartis Corp.*, 378 F. Supp. 2d 1166, 1171 (D. Ariz.

---

[6] The Supreme Court vacated the FDA's 1996 regulations because Congress had not given the agency the authority to regulate tobacco products. *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000).

2005) (collecting case) (cleaned up). When Congress amends a statute—as it amended the FDCA by adding the TCA's tobacco provisions—there is a presumption that Congress is aware of previous court decisions interpreting that statute. *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 696-97 (1979). Had Congress intended section 387p's preservation clause to limit section 337(a), Congress would have added explicit language to the FDCA limiting section 337(a). Congress has demonstrated that when it wants to limit the effect of section 337, it does so explicitly; in 1990, Congress amended section 337 to explicitly allow states to enforce certain FDCA food provisions. *See* 21 U.S.C. § 337(b). But Congress did not do so here either when it enacted the TCA in 2009 or when it further amended the scope of the TCA in 2022.

How, then should the Court construe the limits of state and local authority to enact tobacco product sales restrictions under section 387p in light of the constraints of section 337(a)? So long as the state sales restriction is not "parasitic" on the FDCA—that is, if the sales restriction does not reference or depend upon a requirement of the FDCA—it is not preempted by section 337(a).

Indeed, this is the case for the tobacco product flavor restrictions that are the subject of the cases Defendant highlights in his Opposition. *See* Opp. at 26-27. In each of *R.J. Reynolds Co. v. City of Edina*, 60 F.4th 1170 (8th Cir. 2023), *R.J. Reynolds Tobacco Co. v. County of Los Angeles*, 29 F.4th 542 (9th Cir. 2022), *National Association of Tobacco Outlets, Inc. v. City of Providence*, 731 F.3d 71 (1st Cir. 2013), and *U.S. Smokeless Manufacturing Co. LLC v. City of New York*, 708 F.3d 428 (2d Cir. 2013), the defendant localities enacted restrictions on sales of flavored tobacco products that did not reference or otherwise depend upon the TCA or the FDCA. These sales restrictions that survived preemption challenges are not analogous to section 995.15. In those cases, the plaintiff tobacco companies unsuccessfully argued that section 387p's express

14

preemption provision that applies to state or local "tobacco product standards" preempted the restrictions on flavored tobacco products. Unlike section 995.15, none of those situations involved a state or local restriction that "exist[ed] solely by virtue of the FDCA." *Buckman*, 531 U.S. at 349. Because section 337(a) was not at issue in those cases, they are not analogous to the situation here. *See IFAST*, 2025 U.S. Dist. LEXIS 85732, at *34-35 ("Unlike the ordinance upheld in . . . *City of Edina*, which implemented a straightforward ban on flavored tobacco products, House File 2677 establishes a directory with requirements contingent on manufacturers' compliance with federal premarket authorization processes.").

Further consideration of how Defendant's interpretation of the interplay between the TCA's savings clause and section 337(a) would work in practice confirms that Defendant's interpretation is incorrect. For example, the FDCA requires tobacco product manufacturing facilities to register with the FDA, 21 U.S.C. § 387e(b), and it authorizes the federal government to take enforcement actions against anyone, including a retailer, that sells a tobacco product manufactured in a facility not registered with the FDA.[7] Although section 337(a) says that no one other than the federal government may enforce the FDCA, Defendant's interpretation of section 387p would allow a State to enforce 21 U.S.C. § 387e(b) simply by adopting a "sales requirement" prohibiting the sale of any tobacco products manufactured in non-FDA-registered facilities. Or, to take another example, the FDCA requires the manufacturer or importer of certain tobacco products to pay a quarterly "user fee" to the FDA, 21 U.S.C. § 387s, and it authorizes the federal government to take enforcement actions against anyone, including a retailer, who sells a tobacco product

---

[7] *See* 21 U.S.C. § 387c(a)(6) (providing that a tobacco product is "misbranded" if it is manufactured in a non-FDA-registered facility); 21 U.S.C. § 331(a) (prohibiting the sale of, *inter alia*, "misbranded" tobacco products); 21 U.S.C. §§ 332-334 (authorizing civil and criminal enforcement proceedings for violations of section 331).

manufactured or imported by a person that has not paid the user fee.[8] Defendant's interpretation of section 387p would allow a State to enforce 21 U.S.C. § 387s by adopting a "sales requirement" prohibiting the sale of any tobacco product manufactured or imported by a person who did not pay the user fee. The situation here is not materially different. The FDCA requires a manufacturer of a "new" tobacco product, including an ENDS product, to obtain FDA marketing authorization through the PMTA process under 21 U.S.C. § 387j, and it authorizes the federal government to take enforcement action against anyone, including a retailer, who sells an ENDS product that lacks FDA authorization.[9] Defendant's reading of section 387p would allow a State to enforce 21 U.S.C. § 387j through a "sales requirement" that prohibits the sale of any ENDS product that lacks FDA authorization. And, indeed, that is what section 995.15 does in part.

At the end of the day, states are free to impose a wide range of sales restrictions on tobacco products under 21 U.S.C. § 387p, including banning the sale of entire categories of tobacco products (such as flavored tobacco products) altogether.[10] What section 337(a) says states cannot do, however, is make such sales restrictions contingent on provisions of the FDCA. That is what Wisconsin Statutes § 995.15 does here. For that reason, it is impliedly preempted.

---

[8] *See* 21 U.S.C. § 387b(4) (providing that a tobacco product is "adulterated" if the manufacturer or importer failed to pay the required user fee); 21 U.S.C. § 331(a) (prohibiting the sale of, *inter alia*, "adulterated" tobacco products); 21 U.S.C. §§ 332-334 (authorizing civil and criminal enforcement proceedings for violations of section 331).

[9] *See* 21 U.S.C. § 387b(6)(A) (stating that a tobacco product is "adulterated" if it requires FDA authorization and does not have such authorization); 21 U.S.C. § 331(a) (prohibiting the sale of, *inter alia*, "adulterated" tobacco products); 21 U.S.C. §§ 332-334 (authorizing civil and criminal enforcement proceedings for violations of section 331).

[10] For this reason, the conclusion by the district court in *Vapor Technology Association v. Wooten*, 2025 U.S. Dist. LEXIS 123020, that the plaintiffs' interpretation of section 337(a) would render the preservation and savings clause found in section 387p a "nullity" is erroneous.

**C.      Plaintiffs Will Suffer Irreparable Harm Absent Preliminary Relief.**

Defendant argues that the business Plaintiffs will not suffer irreparable harm in the absence of an injunction because any decline in revenue from the retailer and wholesaler Plaintiffs' inability to sell unlisted ENDS products will be temporary and Plaintiffs will suffer no permanent loss in revenue or profits from their inability to sell unlisted ENDS products.

Defendant ignores the fact that the retailer and wholesaler Plaintiffs, including Distro Guys, already sell products that are likely to be listed on the directory and yet those sales alone would be grossly insufficient to cover their operating expenses, let alone represent net profits. *See* PFF, ¶¶ 56, 57, 64, 66, 67, 71, 72, 78. Defendant's suggestions that customers will move entirely from purchasing ENDS products that do not qualify for listing on the registry to ENDS products that do without any permanent drop in Plaintiffs' revenues or profits are nothing more than rank speculation. Indeed, the testimony of Plaintiffs Wylie and Carmody—both of whom were long-term cigarette smokers before they discovered their favored ENDS products that they purchase at specialty vape shops—reflects the reality that all ENDS products are not fungible. Plaintiff Carmody cites having access to a variety of non-tobacco flavors as critical to preventing her from going back to smoking traditional cigarettes. ECF No. 22 at ¶¶ 8, 10. Plaintiff Wylie likewise testifies that having a variety of flavors and sizes of ENDS products available to him keeps him from returning to smoking traditional cigarettes. ECF No. 23 at ¶ 9.

Defendant relies on the Declaration of Scott Drenkard[11] to suggest that when Plaintiffs' customers are no longer able to buy ENDS products that are ineligible for the directory, they will

---

[11] It is beyond ironic that in the same memorandum where Defendant purports to defend section 995.15 on public health grounds, Opp. at 43-45, Defendant relies on the testimony of an employee of the largest traditional cigarette manufacturer in the country. Drenkard's motivation to testify in opposition to Plaintiffs' motion is entirely consistent with his employer's significant financial interest in aggressive enforcement of section 995.15.

shift toward eligible products rather than stop using ENDS altogether. But Drenkard's declaration is nothing more than double hearsay, an improper expert opinion, and irrelevant, as Drenkard readily admits that the "tracked" sales channels data that are the subject of his analysis cover traditional tobacco outlets like gas stations, convenience stores, and grocery stores, but not specialty vape shops and tobacco stores like those operated by Plaintiffs. Further, in any event, a review of the chart attached to Drenkard's declaration reflects a significant decline in *total* ENDS product sales after the implementation of Louisiana's vapor product directory similar to what Plaintiffs anticipate here. Once one accounts for the significantly larger capacity (i.e., in milliliters of e-liquid) of the "illicit vapor products" referenced in Drenkard's declaration,[12] the combined volume of "directory products" and "illicit vapor products" shipped prior to the implementation of Louisiana's vapor product directory is far greater than the combined volume shipped after implementation. Even though the data only reflect shipments to traditional tobacco retailers that carry far more products eligible for listing than Plaintiffs, the difference between the total volumes of both product categories shipped before and after Louisiana's directory implementation represents permanent lost revenues and profits. Given the product mixes they carry, the impact on Plaintiffs will be profoundly more dramatic.[13]

In any event, Plaintiffs need not show that every possible modification to their businesses is likely to be unsuccessful to prove irreparable harm. *See Galvin v. New York Racing Ass'n*, 70 F.

---

[12] As noted in Drenkard's declaration, the e-liquid capacities for many ENDS products he categorizes as "illicit" are significantly larger than those of the FDA-authorized "directory vapor products." *See* Drenkard Declaration, ECF No. 38, at ¶ 6.

[13] Defendant's speculation also fails to account for the fact that, in his post-enforcement world where no retailers go out of business because of the directory, the same number of retailers across the state would be selling a significantly diminished variety of products. Common sense suggests that at least some retailers that previously carried a wider range of products would be forced out of business in such a scenario.

Supp. 2d 163, 170 (E.D.N.Y. 1998) ("[T]he loss of business need not be total, so long as it is so great as to seriously compromise the company's ability to continue in its current form.") (emphasis added); *cf. Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, 38 (2d Cir. 1995) ("Where the loss of a product will cause the destruction of a business itself or indeterminate losses in other business [because, for example, the product attracted customers who make purchases of other goods while buying the product in question] . . . a preliminary injunction [is] appropriate."); *VanDerStok v. Garland*, 633 F. Supp. 3d 847, 855 (N.D. Tex. 2022) ("But even costs that are recoverable from another source (*e.g.*, by cost-shifting to customers or offering alternate products) may constitute irreparable harm where the loss threatens the very existence of the movant's business" (cleaned up)).

Defendant's specious complaints about Plaintiffs' supposed failure to "quantify their potential losses," Opp. at 39, or adequately "prepare for the implementation" of the directory, Opp. at 39, 40, ignore the fact that the WDOR has yet to actually publish the directory so that Plaintiffs could know with certainty which products will be permissible to sell. The retailer Plaintiffs have done all that they reasonably could under the circumstances; they have examined their revenue and sales figures to evaluate what percentages come from sales of ENDS products subject to section 995.15, examined other comparable state ENDS product directories and, based on the products listed therein, concluded that the lost sales they will suffer of products unlikely to qualify for the directory will make staying in business cost prohibitive. *See* ECF No. 18 at ¶¶ 12-14; ECF No. 20 at ¶¶ 8-9; ECF No. 21 at ¶¶ 8-11.

Plaintiffs here are similarly situated to those in *IFAST*, where the directory was never published because the Iowa Department of Revenue suspended publication to allow the district court to consider the plaintiffs' preliminary injunction motion. 2025 U.S. Dist. LEXIS 85732, at

*4. Yet that court had no trouble concluding that the "manufacturer and retailer Plaintiffs face substantial economic harm—including lost sales, customers, and goodwill—if House File 2677 takes effect." *Id*. at *20. This Court should conclude the same.

## **CONCLUSION**

For the reasons explained in their opening memorandum and herein, Plaintiffs respectfully request that the Court grant their motion and preliminarily enjoin Defendant Secretary Casey from enforcing Wisconsin Statutes § 995.15.

Dated: July 30, 2025

Kendall W. Harrison
State Bar No. 1023438
Jenna L. Riddle
State Bar No. 1129373
GODFREY & KAHN, S.C.
One East Main Street, Suite 500
P.O. Box 2719
Madison, WI 53701-2719
Phone: 608-257-3911
Fax: 608-257-0609
kharrison@gklaw.com
jriddle@gklaw.com

By: _____ s/ Eric N. Heyer _____
Eric N. Heyer
James C. Fraser
Joseph A. Smith
Anna Stressenger
Ryan D. Callinan
THOMPSON HINE LLP
1919 M Street, NW, Suite 700
Washington, DC 20036
T: (202) 331-8800
F: (202) 331-8330
Eric.Heyer@ThompsonHine.com
Joe.Smith@ThompsonHine.com
James.Fraser@ThompsonHine.com
Anna.Stressenger@ThompsonHine.com
Ryan.Callinan@ThompsonHine.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 30, 2025, I caused the foregoing to electronically filed via the

Court's ECM/ECF system, and thereby electronically served on all counsel of record.


/s/ Eric N. Heyer
Eric N. Heyer