# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

|  |  |
|---|---|
| ) | |
| WISCONSINITES FOR ALTERNATIVES   TO ) | |
| SMOKING AND TOBACCO, INC.; JHH 5 ) | |
| BROTHERS, LLC d/b/a DISTRO GUYS ) | |
| WHOLESALE; TRUVIBE INC. d/b/a THE ) | Case No. 3:25-cv-552-wmc |
| SUPPLY PLUS; JOHNNY VAPES, LLC; ) | |
| VISFOT, INC. d/b/a NARA SMOKE SHOP; ) | **MEMORANDUM IN SUPPORT** |
| WAGES AND WHITE LION INVESTMENTS, ) | **OF EXPEDITED MOTION FOR** |
| LLC d/b/a TRITON DISTRIBUTION; KURT ) | **INJUNCTION PENDING** |
| WYLIE; and GERMAINE CARMODY, ) | **APPEAL** |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| DAVID CASEY, Secretary of the Wisconsin ) | |
| Department of Revenue, in his official capacity, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Pursuant to Rule 62(d) of the Federal Rules of Civil Procedure, Plaintiffs Wisconsinites for Alternatives to Smoking and Tobacco, Inc., JHH 5 Brothers, LLC d/b/a Distro Guys Wholesale, TruVibe Inc. d/b/a The Supply Plus ("The Supply Plus"), Johnny Vapes, LLC ("Johnny Vapes"), Visfot Inc. d/b/a Nara Smoke Shop, Wages and White Lion Investments, LLC d/b/a Triton Distribution, Kurt Wylie, and Germaine Carmody respectfully request that this Court grant their expedited motion for injunction pending appeal of this Court's order denying their motion for preliminary injunction (ECF No. 76).

This Court should enjoin the enforcement of Wisconsin Statutes § 995.15 until resolution of Plaintiffs' appeal of the Court's order to the Seventh Circuit, which Plaintiffs are requesting to

1

expedite.[1] Plaintiffs are likely to prevail on their appeal, are already suffering substantial irreparable harm that will shortly lead to the closure of several of their businesses, and, at minimum, "have a good enough case on the merits for the balance of harms to entitle [them] to an injunction pending an expedited appeal that will enable the merits to be fully briefed and argued." *Cavel Int'l, Inc. v. Madigan*, 500 F.3d 544, 549 (7th Cir. 2007).

## ARGUMENT

Plaintiffs ask this Court to enjoin enforcement of Wis. Stat. 995.15 pending appeal because, as the Seventh Circuit has recognized, even a merits argument that may not present a "winning case" entitles a plaintiff to an injunction pending appeal if the substantial irreparable harm the plaintiff would otherwise suffer would permanently destroy the plaintiff's business and the defendant would suffer no significant harm from the injunction. *Cavel*, 500 F.3d at 547, 549. Because, at minimum, those requirements are met here, the Court should grant Plaintiffs' motion.

A state statute is properly enjoined pending appeal "if the usual criteria for a stay pending appeal are satisfied." *Id.* at 546. The "usual criteria" for a stay pending appeal are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also Nat'l Wildlife Refuge Ass'n v. Rural Utilities Serv.*, 2024 U.S. Dist. LEXIS 76854, at \*5 (W.D. Wis. Apr. 26, 2024) ("The standard calls for equitable balancing, much like that required in deciding whether to grant a preliminary injunction" in the first place, but the "first two factors are most critical."). "As with a motion for a

---

[1] Plaintiffs plan to file a motion for an expedited briefing schedule, hearing, and decision with the Seventh Circuit on Tuesday, September 9, 2025.

2

preliminary injunction, a 'sliding scale' approach applies; the greater the moving party's likelihood of success on the merits, the less heavily the balance of harms must weigh in its favor, and vice versa." *A&F Enters., Inc. II v. IHOP Franchising LLC (In re A&F Enters., Inc. II)*, 742 F.3d 763, 766 (7th Cir. 2014) (quoting *Cavel*, 500 F.3d at 547-48).

A district court order granting an injunction pending appeal is appropriate to maintain the status quo when the appellate court has yet to weigh in. *See S&S Sales Corp. v. Marvin Lumber & Cedar Co.*, No. 06C0354, 2006 U.S. Dist. LEXIS 75138, at *2 (E.D. Wis. Oct. 16, 2006) ("Fed. R. Civ. P. 62(c) . . . provides that when an appeal is taken from an interlocutory . . . judgment granting . . . or denying an injunction, the [district] court in its discretion may suspend . . . or grant an injunction during the pendency of the appeal.") (second, third, fourth, and fifth alterations in the original and internal quotations omitted); *Lakefield Tel. Co. v. N. Telecom*, No. 86-C-0619, 1989 U.S. Dist. LEXIS 19559, at *2 (E.D. Wis. Nov. 6, 1989) ("The purpose of the injunction pending appeal is to assure that Lakefield does not suffer irreparable harm pending the final outcome of the litigation."); *accord Kidder, Peabody & Co. Inc. v. Masus Energy Corp.*, 925 F.2d 556, 565 (2d Cir. 1991) (injunction upheld because the district court found that injunctive relief was necessary to preserve the status quo); *Coastal Corp. v. Texas Eastern Corp.*, 869 F.2d 817, 820 (5th Cir. 1989) (district court may issue an injunction if necessary to maintain the status quo); *Hoffman v. Beer Drivers & Salesmen's Local*, 536 F.2d 1268, 1276 (9th Cir. 1976) (the district court has a "continuing duty to maintain a status quo").

In *Cavel*, the Illinois legislature enacted a statute that prohibited the production of horsemeat for human consumption. 500 F.3d at 545. The statute would have resulted in the permanent closure of the plant for the lead plaintiff, as 99% of its production was of horsemeat for human consumption in Europe. *Id*. at 545-46. After the district court denied the plaintiff's motion

3

for a preliminary injunction based on its foreign commerce clause claim, the Seventh Circuit (Posner, J.) concluded that the plaintiff had "made a compelling case that it needs the injunction pending appeal to avert serious irreparable harm—the uncompensated death of its business." *Id*. at 546. The Seventh Circuit noted that "[i]f an appeal has no merit at all, an injunction pending the appeal should of course be denied. But if the appeal has some though not necessarily great merit, then harm of the magnitude shown by [plaintiff] in this case would justify the granting of an injunction pending appeal provided, as it also true in this case, that the defendant would not suffer substantial harm from the granting of the injunction." *Id*. at 547. Ultimately, the Seventh Circuit granted the injunction pending appeal, concluding that "[w]e do not suggest that [plaintiff] has a winning case or even a good case . . . , but only that it has a good enough case on the merits for the balance of harms to entitle it to an injunction pending an expedited appeal that will enable the merits to be fully briefed and argued." *Id*. at 549.

A.    **Plaintiffs are Likely to Succeed on the Merits of their Appeal and, at Minimum, Have a "Good Enough" Case on the Merits to Justify an Injunction**

Plaintiffs are likely to succeed on the merits of their appeal because Wisconsin Statutes § 995.15 is impliedly preempted by the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 337(a). By requiring ENDS product manufacturers to comply with the FDCA's premarket tobacco product application requirements set forth in 21 U.S.C. § 387j, section 995.15 impermissibly seeks to indirectly enforce the Act.[2]

In denying Plaintiffs' motion for preliminary injunction, the Court concluded that in enacting 21 U.S.C. § 387p as part of the Tobacco Control Act ("TCA"), "Congress intended that States use the TCA as a floor for further restrictions on tobacco product manufacturers from

---

[2] Plaintiffs incorporate herein by reference their previous briefing in support of their motion for preliminary injunction *See* ECF Nos. 15, 16, 47, and 70.

accessing their markets." ECF No. 76 at 13. The Court interpreted the language in section 387p(a)(1)'s preservation clause that references state measures that are "in addition to, or more stringent than" requirements under the TCA to mean that Congress intended the states to have "the power to enact and enforce the same or *additional* sales requirements." *Id*. at 16.

But the Court's reading of "in addition to, or more stringent than" as reflecting Congressional intent to allow state governments to enforce the FDCA by enacting statutes that incorporate FDCA requirements is contradicted by the text and structure of the FDCA itself. First, as the Eighth Circuit has noted, "[e]ssentially, the Preservation Clause tells us that there is no 'field preemption' for the TCA." *R.J. Reynolds Tobacco Co. v. City of Edina*, 60 F.4th 1170, 1174 (8th Cir. 2021). But it is implied conflict preemption, not field preemption, that is at issue with respect to section 995.15.

Second, as to conflict preemption, as Plaintiffs noted in their earlier briefing, *see* ECF No. 70 at 4-5, in other preemption-related provisions of the FDCA, Congress repeatedly referenced state measures that are "different from, in addition to, or *otherwise not identical to*" the FDCA's requirements. *See* 21 U.S.C. §§ 364j(a), 379aa(h)(1), 379aa-1(h)(1), and 379s(a) (emphasis added). However, neither the preservation clause, the express preemption clause, nor the savings clause found in 21 U.S.C. § 387p contains such language. Rather, the preservation clause merely references requirements that are "in addition to, or more stringent than" the FDCA's requirements. The omission of "not identical to" in section 387p's preservation clause suggests that, instead of intending to allow states to "enact and enforce the same" requirements as those imposed by the FDCA, as the Court concluded, Congress only intended to allow states to impose requirements that *differ* from those imposed by the FDCA. Indeed, such a reading is particularly suggested both by Congress's command in section 337(a) that only the federal government can enforce the

FDCA's requirements and Congress's history of amending section 337 itself when Congress intends the states to be able to enforce the FDCA's requirements. *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S .363, 373 (2000) (observing that whether conflict preemption applies "is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects"); *Abramski v. United States*, 573 U.S. 169, 179 (2014) (noting that, in statutory interpretation, a court "must (as usual) interpret the relevant words not in a vacuum, but with reference to the statutory context, structure, history and purpose" (cleaned up)). Thus, even if, in some instances, Congress intended to allow state requirements that are more demanding than those imposed by the FDCA (such as state laws prohibiting sales of non-tobacco-flavored tobacco products when the FDCA does not do so), such does not necessarily imply that Congress intended to allow states to incorporate into state law and enforce the FDCA's requirements themselves.

In its opinion, the Court also noted that a violation of the FDCA is not in and of itself an actionable basis for the Wisconsin Department of Revenue ("WDOR") to initiate enforcement proceedings against Plaintiffs. ECF No. 76 at 16. But it is indisputable that a manufacturer's failure to comply with 21 U.S.C. § 387j's premarket application requirements necessarily means that an ENDS product will not qualify for the directory established by section 995.15. Thus, the Wisconsin statute indirectly compels compliance with the FDCA's premarket review requirements.

Section 995.15's interference with the enforcement authority that Congress has bestowed exclusively upon FDA is a quintessential example of implied conflict preemption. *See, e.g.*, *Petr v. BMO Harris Bank N.A.*, 95 F.4th 1090, 1102 (7th Cir. 2024) ("Conflict preemption applies to cases where . . . the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."); *United States v. Iowa*, 126 F.4th 1334 (8th Cir.

2025) ("Even accepting Iowa's interpretation, Section 2 is still an obstacle to the exercise of the discretion that Congress gives to federal officials charged with enforcing federal immigration law."); *Geo Grp., Inc. v. Newsom*, 50 F.4th 745, 762 (9th Cir. 2022) ("AB 32 frustrates that congressional intent, creating a conflict between [AB 32's] requirement . . . and the action which Congress and the Department [of Homeland Security] have taken to insure the appropriateness of facilities to house detainees. Such interference with the discretion that federal law delegates to federal officials goes to the heart of obstacle preemption.") (cleaned up); *IFAST*, 2025 U.S. Dist. LEXIS at *37-38 ("The law's operative effect is to create a state-level enforcement regime for federal premarket authorization requirements, with Iowa substituting its enforcement discretion for that of the FDA."). Accordingly, Plaintiffs are ultimately likely to succeed on their claim that Section 995.15 is impliedly preempted.

And, even though the Court rejected Plaintiffs' position in ruling on their motion for preliminary injunction, as the Court noted at the August 1, 2025 hearing on that motion, "[i]t's . . . certainly not frivolous, and I understand why you're taking the position you are." Aug. 1, 2025 Hrg. Tr. at 7; *see also* ECF No. 76 at 12-13 ("Even so, analyzing these clauses together *leaves room to argue* about Congress's actual intent to preempt States' laws, especially relying in part on requirements of the TCA in enacting law[s] that prohibit tobacco product sales" (emphasis added).). Indeed, as the Court noted, another district court has reached the opposite conclusion about Congress's intent when weighing a nearly identical state directory restriction. ECF No. 76 at 15-16 (discussing *Iowans for Alternatives to Smoking & Tobacco, Inc. v. Iowa Dep't of Revenue*, 781 F. Supp. 3d 724 (S.D. Iowa May 2, 2025)). Thus, even if the Court still does not agree that Plaintiffs are likely to succeed on the merits of their implied preemption claim, as in *Cavel*, the Court should conclude that Plaintiffs' arguments—which are subject to *de novo* review on

appeal[3]—have at least "some" merit and a "good enough case on the merits" to justify an injunction pending an expedited appeal of the order denying a preliminary injunction. 500 F.3d at 547, 549.

### B.    Plaintiffs Will Be Irreparably Injured Absent Injunction.

Even if the Court's prediction that it "sees little likelihood of the state or even a private citizen ramping up enforcement before plaintiffs will have an opportunity to seek emergency relief" ultimately proves correct, the draconian sanctions section 995.15 imposes for violations of its terms mean that Plaintiffs are already suffering immense irreparable harm that, absent an injunction, will certainly result in the shuttering of several Plaintiffs' stores before the Seventh Circuit can issue even an expedited merits decision.

As Plaintiffs previously briefed, section 995.15(9)(a) provides that "[b]eginning September 1, 2025," WDOR "shall impose on each retailer who sells or offers for sale" an ENDS product "that is not included in the directory a forfeiture of $1,000 per day for each . . . device offered for sale in violation of this section." Thus, even if it did not start imposing such penalties until 30 or 60 days later, WDOR could impose penalties of $1,000 per day per product all the way back to September 1, 2025. In light of this, Plaintiffs Johnny Vapes and The Supply Plus removed non-directory ENDS products from their shelves starting on September 1, 2025. Sept. 8, 2025 Declaration of Tyler Hall ("Hall Decl."), ¶ 5; Sept. 8, 2025 Declaration of David Beaupre ("Beaupre Decl."), ¶ 5. The reduction in their sales has been dramatic. Johnny Vapes' daily revenues across all of its stores have declined as follows:

| | |
|---|---|
| August 25th- $13,408.28 | September 2nd- $2,459.65 |
| August 26th- $14,712.71 | September 3rd- $1,884.70 |
| August 27th- $19,672.86 | September 4th- $2,701.45 |
| August 28th- $18,946.55 | September 5th- $2,815.50 |
| August 29th- $38,650.03 | September 6th- $2,390.25 |
| August 30th- $32,373.29 | September 7th- $1,282.55 |

---

[3] *Doe v. Univ. of Southern Ind.*, 43 F.4th 784, 791 (7th Cir. 2022).

August 31st- $24,005.61

Hall Decl., ¶¶ 6-7. And The Supply Plus's revenues across its stores have similarly plummeted. During the week of August 25-31, 2025, The Supply Plus's sales generated $159,843.36 in revenue, with 3,184 customers making purchases in its stores. Beaupre Decl., ¶ 6. During the week of September 1-7, 2025, those figures had dropped to $37,642.79 in revenue and only 1,277 customers. *Id*, ¶ 7.

The Court has already recognized that section 995.15 will "significantly limit the ability for businesses to operate gainfully and consumers to get ENDS products of their choice," and that, as the above revenue figures demonstrate, "switching to carrying the few industry products that are currently compliant with [section] 995.15 is not feasible." ECF No. 76 at 20-21. Johnny Vapes and The Supply Plus now confirm that their current revenue figures are well below the level required to break even, that they are suffering substantial losses every day that they remain open, and that without an injunction pending appeal, they will be forced to close their doors before the Seventh Circuit issues even an expedited merits decision on Plaintiffs' appeal. Hall Decl., ¶¶ 8-9; Beaupre Decl., ¶¶ 8-9. Thus, even if Plaintiffs ultimately succeed on their appeal before the Seventh Circuit, for Johnny Vapes and The Supply Plus, such would be merely a pyrrhic victory. Like the "uncompensated death of [the plaintiff's] business" that the Seventh Circuit found sufficient to justify an injunction pending appeal in *Cavel*, 500 F.3d at 546, the deathbed status of the retailer Plaintiffs' businesses here likewise justifies an injunction.

### C.    The Balance of Equities and Public Interest Factors Weigh in Favor of Injunction Pending Appeal.

When the government is a defendant, the balance of equities and public interest factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Because Plaintiffs have established a likelihood of success on the merits on appeal, and because Plaintiffs will undoubtedly face

9

irreparable harm if forced to endure enforcement of section 995.15 pending the outcome of their appeal, the balance of equities and public interest factors automatically weigh in their favor. *ACLU v. Alvarez*, 679 F.3d 583, 589-90 (7th Cir. 2012) (noting that "if the moving party establishes a likelihood of success on the merits, the balance of harms normally favors granting preliminary injunctive relief because the public interest is not harmed by preliminarily enjoining the enforcement of a statute that is probably unconstitutional"); *Bank One, N.A. v. Gattau*, 190 F.3d 844, 848 (8th Cir. 1999) (holding that where a plaintiff proves that a State law is preempted and irreparably harms the plaintiff, "the question of harm to the State and the matter of the public interest drop from the case" because the plaintiff "will be entitled to injunctive relief no matter what the harm to the State, and the public interest will perforce be served by enjoining the enforcement of the invalid provisions of state law"); *see also Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) (stating that when a plaintiff establishes "a likelihood that" a defendant's action "violates the U.S. Constitution," the plaintiff has "also established that both the public interest and the balance of the equities favor a preliminary injunction").

And even if the Court remains unconvinced that Plaintiffs are likely to succeed on the merits of their claims, as in *Cavel*, Plaintiffs present "a compelling case that [they] need the injunction pending appeal to avert serious irreparable harm." 500 F.3d at 546. As in that case, what is at issue is, in effect, "a *stay*, based on a showing in a particular case that the harm to the challenger from denial of a stay would greatly exceed the harm to the state from its grant, that would delay the application of the statute to the challenger for a few months. Such a stay does not operate as a statutory revision or significantly impar democratic governance." *Id*.

The Court concluded that Plaintiffs' "unexplained delay in bringing suit until just before the statute takes effect offsets the arguably limited harm in further extending enforcement for a

few more months given the state's repeated extensions of the date enforcement would begin." ECF No. 76 at 22. But when assessing whether injunctive relief is barred by "unreasonable delay . . . [m]ere delay is not enough; prejudice must also be shown." *Grossbaum v. Indianapolis-Marion Cty. Bldg. Auth.*, 63 F.3d 581, 585 n.5 (7th Cir. 1995) (citing *Gardner v. Panama R.R.*, 342 U.S. 29, 31 (1951) (per curiam)); *see also NLRB v. P\*I\* E v. Nationwide, Inc.*, 894 F.2d 887, 894 (7th Cir. 1990) (finding that "unjustifiable delay" in seeking an injunction requires a showing of harm, as "[m]ere delay is not enough to show laches"). Defendant has not adduced any such evidence of prejudice here, as exemplified by the fact that his argument on the point consists of only two conclusory sentences at the end of his supplemental brief. ECF No. 61 at 19-20.

Therefore, the balance of equities and public interest likewise favor an injunction pending appeal.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion for an injunction pending appeal and enjoin Defendant from enforcing Section 995.15 during the pendency of Plaintiffs' appeal.

Dated: September 8, 2025

Kendall W. Harrison
State Bar No. 1023438
Jenna L. Riddle
State Bar No. 1129373
GODFREY & KAHN, S.C.
One East Main Street, Suite 500
P.O. Box 2719
Madison, WI 53701-2719
Phone: 608-257-3911
Fax: 608-257-0609
kharrison@gklaw.com
jriddle@gklaw.com

By:_____/s/ Eric N. Heyer_____
Eric N. Heyer

11

James Fraser
Joseph A. Smith
Anna Stressenger
Ryan D. Callinan
THOMPSON HINE LLP
1919 M Street, NW, Suite 700
Washington, DC 20036
T: (202) 331-8800
F: (202) 331-8330
Eric.Heyer@ThompsonHine.com
Joe.Smith@ThompsonHine.com
James.Fraser@ThompsonHine.com
Anna.Stressenger@ThompsonHine.com
Ryan.Callinan@ThompsonHine.com

*Counsel for Plaintiffs*